| | | |
|---|---|---|
| JUAN CARRERO-VASQUEZ, #358107<br>Plaintiff, | * | |
| v. | * | CIVIL ACTION NO. RDB-13-996 |
| BOBBY P. SHEARIN (WARDEN)<br>RANDY WATSON<br>ROBIN WOOLFORD<br>BARBRA NEWLON<br>P.A. FLURY<br>DR. JOUBERT<br>DR. YOHYA<br>NURSE KORLA BUCK<br>NURSE KRISTY CORTEZ<br>DR. OTTEY<br>LEON VICKERS<br>TIFFANY BENNETT<br>JANICE GILMORE<br>MONICA METHONY<br>BILL BEEMAN<br>DR. SHELTON<br>WEXFORD HEALTH SOURCES, INC.<br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>* | |

*****

## MEMORANDUM OPINION

Pending is self-represented Plaintiff Juan Carrero-Vasquez's ("Plaintiff") Complaint filed pursuant to 42 U.S.C. § 1983. (ECF No. 1). Defendants,[1] by their counsel, have filed Motions to Dismiss or, in the Alternative, for Summary Judgment with declarations and verified exhibits. (ECF Nos. 17 & 24). Plaintiff has filed Opposition responses. (ECF Nos. 30-31). The Medical Defendants filed a Reply. (ECF No. 32). No hearing is needed to resolve the issues presented. *See* Local Rule 106.5 (D. Md. 2011). For reasons to follow, the claims against Defendants Newlon, Vickers, and Shelton ARE DISMISSED and Defendants Wexford Health Resources,

---

[1] Defendants Newlon, Vickers, and Shelton were not served. It is apparent that Plaintiff's claims against them are unavailing for the reasons discussed herein. The claim against Defendants Newlon, Vickers, and Shelton will be dismissed.

Inc., Ottey, Flury, Joubert, Yahya, Buck, Cortez, Bennett, Gilmore, Metheny, Beeman, Shearin, Watson, and Woolford's[2] dispositive motions, treated as Motions for Summary Judgment, ARE GRANTED.

## BACKGROUND

In this Complaint, Plaintiff, an inmate formerly housed at the Western Correctional Institution ("WCI") and North Branch Correctional Institution ("NBCI") in Cumberland, Maryland,[3] claims that he filed a number of administrative remedy procedure ("ARP) grievances regarding his medical conditions and Defendants were deliberately indifferent to his orthopedic and neuropathic pain and needs. He asks to be transferred to the University of Maryland Hospital to receive care under a "treatment plan," to have disciplinary sanctions imposed on Defendants and to receive compensatory, punitive, exemplary, and nominal damages. (ECF No. 1).

## STANDARD OF REVIEW

### I. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of*

---

[2] The Clerk shall amend the docket to reflect the correct spelling of the names of Defendants Ali Yahya, Carla Buck, and Monica Metheny;

[3] Following the Court of Appeals of Maryland reversal and remand of his convictions on March 21, 2013, Plaintiff is detained at the Montgomery County Correctional Facility awaiting retrial on drug, weapons, and traffic charges.

*Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, this Court "need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. Id. (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). Second, a complaint must be dismissed if it does not allege a "plausible" claim for relief. *Id.* at 678–79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

2.  **Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Cruz v. Beto*, 405 U.S. 319 (1972). The requirement of liberal construction does not mean the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). The Court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## ANALYSIS

The Complaint is filed pursuant to 42 U.S.C. § 1983, which "' is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). A suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**Plaintiff's Allegations**

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party, *see Scott v. Harris*, 550 U.S. 372, 378 (2007); *Erickson*, 551 U.S. at 94, and liberally construes Plaintiff's pleadings in light of the fact that he is self-represented. *See Gordon v. Leek*, 574 F.2d 1147, 1151 (4th Cir. 1978).

A. **Administrative Remedies**

Plaintiff complains that the State Defendants, particularly Defendant Woolford, failed to properly examine and decide his Administrative Remedy Procedure ("ARP") grievances while he was confined at both WCI and NBCI. Whether or not Plaintiff's ARPs have been processed or investigated properly or have been wrongfully dismissed, the law in this Circuit dictates that no constitutional entitlement to grievance procedures or access to such procedures is created merely because such procedures are voluntarily established by a state. *See Adams v. Rice*, 40

F.3d 72, 75 (4th Cir. 1994). Therefore, Plaintiff's issue with the manner in which his grievances were handled and with the decision-making process associated with his ARPs simply does not implicate a constitutional claim.[4]

**B.     Medical Care**

Plaintiff claims that he did not receive a proper treatment plan for his orthopedic and neurological concerns, he was given an injection without his consent, his pain medication was terminated without cause, he was given medication which aggravated his condition, and he was refused surgery, an MRI and other radiology consults.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need.[5] *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

---

[4]     It is arguable that if certain acts or omissions relating to the processing of inmate grievances interfere with an inmate's constitutional right to access the courts, a colorable claim may be stated. *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). Plaintiff has failed to show that Defendants' alleged mishandling of his ARPs impeded his access to the courts.

[5]     The medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *See Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005).

Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter...becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Correctional Ctr.*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer*, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998)).

Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LeFevere*, 423 F. Supp. 2d 1064, 1070-71 (C.D. Cal. 2006).

The Medical Defendants have filed an extensive record which reveals that Plaintiff is a twenty-nine year old male with a medical history significant for right shoulder pain first reported in January of 2010. (ECF No. 17, Ex. 1). He reported pain and numbness involving both shoulders, but denied injury to his shoulders. He opined that his discomfort was the result of

7

repetitive motions associated with his activities at his kitchen job assignment. Plaintiff later reported that his bilateral shoulder discomfort began after lifting weights and engaging in pull-ups. Plaintiff was initially treated for his complaints with Ibuprofen and muscle rub. (ECF No. 17, Ex. 1). In response to his complaint that the muscle rub only provided brief relief, on October 4, 2010, Plaintiff was prescribed the non-steroidal anti-inflammatory drug Naproxen and the muscle relaxant Baclofen. An x-ray taken of his left shoulder showed no abnormality or acute disease. (*Id.*).

On January 26, 2011, Neurontin was added to Plaintiff's regimen after he continued to complain of right shoulder pain with numbness and a pulling sensation. In March 2011, he was seen by Dr. Mark Davis for complaints of shoulder pain. (*Id.*, Ex. 1 at pgs. 27-31). Davis noted tenderness on manipulation and diagnosed Plaintiff with complex regional pain syndrome. Davis injected Plaintiff with the steroid Kenlog and recommended that Plaintiff undergo an MRI of the right shoulder. Davis submitted a request to the utilization contractor for Plaintiff to be evaluated by a psychiatrist/pain management specialist. The request was approved.

On April 21, 2011, Plaintiff was seen and evaluated by pain management specialist Dr. Cornell Shelton at Bon Secours Hospital in Baltimore. (*Id.*, Ex. 1) Shelton diagnosed Plaintiff with myofascial pain syndrome[6] with trigger points and recommended a course of physical therapy ("PT") with hot packs to the trapezius, levator scalpulae, and myofascial muscles and myofascial release techniques. (*Id.*) In addition, Shelton recommended that Plaintiff continue the use of the Baclofen and Neurontin and if no improvement was seen, that Plaintiff receive

---

[6] Myofascial pain syndrome is a chronic pain disorder caused by repetitive motions or stress- induced muscle tension, which places pressure on sensitive points in the muscles.

trigger point injections. The Baclofen was reordered and Plaintiff received PT in June and July of 2011, with noted improvement. Additional PT was, however, denied on the basis that Plaintiff could perform the therapy exercises he had learned on his own. (ECF No. 17, Ex. 1 at pgs. 44-46, 49, & 53-56). Plaintiff was seen and evaluated for further shoulder complaints in August, September and October of 2011. The Medical Defendants note that Plaintiff's Neurontin prescription was discontinued in October of 2011 for repeated non-compliance as Plaintiff had stated the medication was ineffective and he had not taken it.

On November 9, 2011, Plaintiff was seen and evaluated by Dr. Sadik Ali, an on-site consultant, in relation to his numerous ARPs concerning his right shoulder. (*Id.*, Ex. 1 at p. 74). Dr. Ali found no range of motion ("ROM") abnormality and no tenderness or restriction of contraction or relaxation. He concluded that there was no medical indication for conducting an MRI. On December 5, 2011, Plaintiff was seen by Dr. Shelton for a follow-up evaluation. Shelton recommended that Plaintiff continue on Baclofen and that he be returned for a series of three steroid injections at the trigger sites. Plaintiff received his first steroid injection on February 2, 2012, and, at that time reported that his Baclofen was not working. Shelton then recommended the muscle relaxant Flexeril and additional PT, to include deep tissue massage at the trigger points. (*Id.*, Ex. 1 at p. 324, & 328-332). This was approved and on March 5, 2012, Plaintiff received a second trigger point injection and was subsequently given PT at Bon Secours Hospital. (*Id.*, Ex. 1 at pgs. 325, & 328-330).

In April of 2012, Plaintiff was transferred to the Western Correctional Institution and was seen by Physician's Assistant ("PA") Flury on May 3, 2012. He was found to have full ROM

and full strength in his right upper extremity and shoulder. There was no objective finding of pain or deformity and Plaintiff was seen using his right shoulder without any demonstrated discomfort. A prescription for Tylenol as needed was issued and Plaintiff was referred to a physician for further evaluation. (ECF No. 17, Ex. 1 at pgs. 108-110).

On May 11, 2012, Plaintiff was seen by Dr. Eva Joubert for his complaints of right shoulder pain and request for pain medication. Based upon her objective observations, Joubert recommended that Plaintiff continue to perform stretching exercises and that he be reviewed for further orders. On May 16, 2012, Plaintiff was seen by Dr. Yahya for complaints of muscle spasms with right shoulder pain relieved by pain medications and physical therapy. Plaintiff denied any numbness or that the pain interfered with his day-to-day activities. Yahya ordered a prescription of the muscle relaxant Robaxin to take with Plaintiff's pain medication. (*Id.*, Ex. 1 at pgs. 111-113).

On May 26, 2012, Plaintiff was re-evaluated by PA Flury, who noted that Plaintiff had found the Robaxin to be effective, but had requested the reissuance of the Neurontin and Baclofen. Flury observed that Plaintiff had previously been non-compliant with those medications and that given the potential for abuse and the lack of physical finding in support of prescribing those drugs, there was no indication that a prescription change was warranted. (*Id.*, 17, Ex. 1 at pgs. 114-115).

On June 24, 2012, Plaintiff was transferred to NBCI and reported that the Robaxin was affording him inadequate pain relief. He requested another medication and was prescribed Baclofen by PA Katie Winner. (*Id.*, Ex. 1 at pgs. 120-121). On July 11, 2012, Plaintiff was seen

by Nurse Metheny for right upper body pain. She observed that his ROM of the right shoulder and neck appeared to be limited and referred him to a physician for further evaluation. On July 13, 2012, he was seen by Dr. Ottey for complaints of stiffness, tightness, and burning on the right side of his back with increased pain on movement. The objective examination found Plaintiff's spine positive for posterior and paravertebral muscle tenderness. Plaintiff was advised to continue on his current medication regimen. (ECF No. 1, Ex. 1 at pgs. 123 & 125-128).

On July 26, 2012, Plaintiff was seen by Dr. Shelton for pain management. On evaluation, no muscle atrophy was observed and Plaintiff had an active ROM of the shoulder with full external and internal rotation. In addition, Plaintiff had full muscle strength throughout and intact fine and pinprick tough sensation. Dr. Shelton could identify no trigger points on palpation. Dr. Shelton's impression remained unchanged as he found Plaintiff's symptoms were related to myofascial pain syndrome and spastic muscle. He recommended Flexeril for Plaintiff's muscle spasm and concluded he could offer Plaintiff no further care and that medical staff may wish to consider a shoulder MRI "so that nothing is missed." (*Id.*, Ex. 1 at pgs. 325-326).

The Medical Defendants present a record of Plaintiff's healthcare staff examinations by PA Flury, Dr. Ottey, PA Merrill and NBCI nurses throughout the remaining months of 2012. He was prescribed Amytriptiline to treat neuropathic pain, but was found to be non-compliant with taking his medication. Neurontin was added to his medication, as was the anti-inflammatory drug Mobic. (*Id.*, Ex. 1 at pgs. 130, 133-137, 142-158, 166-173, & 176-178).

In January of 2013, Plaintiff was seen by PA Flury for complaints of shoulder pain. Upon examination, no muscle spasm or atrophy was noted. Plaintiff was advised that the consult for an MRI had been placed on hold for further conservative management of his shoulder condition. In the interim another neuropathic pain medication, Nortriptyline was prescribed along with Naproxen. Plaintiff was seen by Dr. Ottey who advised him that he would be reevaluated at a later date after Plaintiff had continued with the new medications prescribed by Flury. Plaintiff was subsequently seen by Nurses Buck and Cortez in response to complaints of chronic pain in his upper body. On examination, no numbness, weakness, or swelling was noted in the shoulder. Sensation and ROM were normal. Plaintiff complained of pain with movement and was advised to continue his medication regimen and exercise program and to apply alternating heat and ice to the shoulder. (ECF No. 1, Ex. 1 at pgs. 179-189).

In February and March of 2013, Plaintiff was seen by Dr. Ottey, The doctor found no clinical changes to Plaintiff's condition, but agreed to re-fill a prescription for Neurontin. Plaintiff reported some relief with the medications, but noted moderate pain with the right shoulder asymmetry, locking of the shoulder, and crepitus. Ottey directed that Plaintiff continue his current medication regimen and ordered an x-ray on the right shoulder. The x-ray showed no abnormalities. (ECF No. 17, Ex. 1 at pgs. 190-197, & 337).

In March and April of 2013, Plaintiff was seen by Nurse Cortez for complaints of pain and stiffness in his right upper shoulder. The objective examination revealed no abnormalities. Plaintiff was advised to continue his medication regimen and exercise program and to apply alternating heat and ice to the shoulder. (*Id.*, Ex. 1 at pgs. 199-201 & 205-207). Plaintiff was

also re-evaluated by Dr. Ottey on March 23 and April 17, 2013. Dr. Ottey opined that no new clinical findings were noted and that it was unlikely that Plaintiff would ever be without pain. Ottey discussed new treatment options with Plaintiff regarding trying different medications. Plaintiff, however, refused to consider new treatment options and no changes were made to his medication regimen. In April of 2013, Plaintiff reported ineffective relief with his current medication regimen. (ECF No. 1, Ex. 1 at pgs. 202-204 & 210-212).

On April 23, 2013, Plaintiff was transferred to the Montgomery County Department of Corrections with a supply of Baclofen and Gabapentin (Neurontin) for his shoulder complaints. (*Id.* at Ex. 2 at Ottey Aff. Ex. 1 at p. 341).

Plaintiff has been asked to rebut Defendants' medical exhibits with his own verified documents to establish a genuine dispute of material fact. After review of his Opposition filings, the Court finds he has failed to do so. The record shows that medical personnel were more than attentive to Plaintiff's medical needs and he was afforded a conservative course of treatment for subjective complaints of shoulder pain. He was repeatedly seen by on-site physicians, PAs and nurses and was examined by a hospital pain management specialist and psychiatrist on at least two occasions. Further, he received x-rays and physical therapy and was prescribed a number of medications, including non-steroidal anti-inflammatory medications, muscle relaxants, steroid injections, and neuropathic drugs. Objective examinations and tests were all normal.

At best, Plaintiff's Complaint alleges that he is not satisfied with the medical care that has been provided to him. Plaintiff does not and cannot allege that Defendants had a culpable state of mind and failed to provide him with treatment for his complaints. The actions of the medical staff are hardly consistent with deliberate indifference to or reckless disregard of a serious

13

medical condition. The fact that Plaintiff did not receive the tests, medications, and consults of his own choosing, does not set out an Eighth Amendment claim.

## CONCLUSION

Even when viewed the evidence in the light most favorable to him and all justifiable inferences are drawn in his favor, Plaintiff's claims are factually unsupported and no genuine issue of material fact is presented. Accordingly, Defendants Wexford Health Resources, Inc., Ottey, Flury, Joubert, Yahya, Buck, Cortez, Bennett, Gilmore, Metheny and Beeman, Shearin, Watson, and Woolford's Motions for Summary Judgment will be granted. Judgment will be entered in favor of these Defendants. The Complaint against Defendants Newlon, Shelton, and Vickers is dismissed. A separate Order follows.

Date: January, 10, 2014

_/s/ Richard D. Bennett_
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE